COMMONWEALTH *vs.* VAHAN HANEDANIAN.

No. 99-P-1192.

Middlesex. December 12, 2000. - February 26, 2001.

Present: ARMSTRONG, C.J., KAPLAN, & GREENBERG, JJ.

*Eavesdropping. Attorney at Law,* Attorney-client relationship. *Statute,* Construction.

At the trial of a complaint alleging violation of provisions of the wiretap statute, G. L. c. 272, § 99, evidence that the defendant intentionally made a secret, unconsented-to interception of certain oral communications warranted the jury's verdict of guilty, and the defendant's motions for required findings were correctly denied. [67]

The secret recording by a client of his conversations with his attorneys was unlawful, and the attorney-client privilege did not create an exception to the provisions of the wiretap statute. [67-68]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on July 22, 1998.

The case was tried before *James H. McGuinness, Jr.,* J.

*Vahan Hanedanian,* pro se.

*Eileen M. O'Brien,* Special Assistant District Attorney, for the Commonwealth.

KAPLAN, J. A complaint dated July 22, 1998, charged the defendant Vahan Hanedanian with tape recording secretly a conversation with his attorney, Walter G. Bilowz, on May 15, 1997, in violation of the provisions of the wiretap statute, G. L. c. 272, § 99, reproduced in part in the margin.[1] The case was

---

[1]"The term 'oral communication' means speech, except such speech as is transmitted over the public air waves by radio or other similar device." G. L. c. 272, § 99 B 2, inserted by St. 1968, c. 738, § 1.

"The term 'interception' means to secretly hear [or] secretly record . . . the contents of any . . . oral communication through the use of any intercepting device by any person other than a person given prior authority by all parties to such communication . . . ." G. L. c. 272, § 99 B 4, inserted by St. 1968,

tried on January 21, 1999, to a jury of six and they brought in a verdict of guilty. Hanedanian appeals from the judgment of conviction.[2]

After becoming acquainted with attorneys Walter G. Bilowz and Paul L. Sweeney, Jr., at a symposium earlier in 1996, Hanedanian in July, 1996, retained them to pursue actions by Comware, Inc. (a company owned and controlled by Hanedanian), against alleged contract breakers and tortfeasors. The retainer envisaged a period of review of the claims, to be followed by more practical steps, the lawyers' rates of compensation to change with the change of tasks.

By the spring of 1997, Hanedanian was complaining to the lawyers that they were procrastinating, working without clear direction, and failing to communicate. With some difficulty, a meeting between Hanedanian and the lawyers was set for 6:00 P.M. on May 15, 1997, at Bilowz's office in North Reading.

Bilowz and Sweeney, called by the Commonwealth, testified at trial that the meeting took place as agreed. Hanedanian was three months in arrears in his payments under the retainer. Hanedanian renewed his grievances about the lawyers' performance and demanded that the lawyers waive and forgive the accrued three months of fees. The discussion became unpleasant. Hanedanian threatened to complain to the Board of Bar Overseers (BBO) about the lawyers' behavior. According to the lawyers' testimony, Hanedanian said toward the end of the meeting he had "silent partners with Italian sounding surnames" who would not sit idly by if the lawyers insisted on payments. The lawyers refused to yield on the point and the meeting ended. The lawyers said the meeting lasted from fifty minutes to an hour.

The following day the lawyers, without disclosing the name of the client, consulted the BBO about withdrawing from the retainer. They withdrew by letter to Hanedanian, and later secured court approval of the withdrawal.

Bilowz and Sweeney testified they had not themselves recorded the May 15 meeting, had not conceived it was being rec-

---

c. 738, § 1.

"Except as otherwise specifically provided in this section any person who — willfully commits an interception . . . of any . . . oral communication shall be [punished] . . . ." G. L. c. 272, § 99 C 1, inserted by St. 1968, c. 738, § 1.

[2]The defendant was sentenced to one year's probation and forty hours of community service.

orded, and had not spoken with Hanedanian about such a recording. That an audio tape recording had in fact been made, and that it still existed and was available, came to the lawyers' attention by the following steps. Hanedanian did complain against them to the BBO, and from a complaint-related letter the BBO sent to Hanedanian in July, 1997, to which the lawyers had access, the existence of a recording could be inferred. In that letter, the BBO wrote it would terminate its investigation of Hanedanian's complaint unless by a given date Hanedanian provided the recording. (The investigation was in fact terminated.) Although thus rebuffed by the BBO, Hanedanian in January, 1998, commenced an action in the name of his Comware company against the lawyers, charging them with malpractice, fraud, and the like. In due course Owen O'Neil, counsel for the lawyers as defendants in the malpractice suit, requested discovery of the recording. In response, Hanedanian's attorney delivered the recording to O'Neil in June, 1998 — and it became an exhibit in the present criminal prosecution.[3] The tape runs for about twenty minutes and contains Hanedanian's stated intention to go to the BBO.

As noted, the lawyers testified flatly that they did not see a recorder at the meeting, did not know any recording of the meeting was taking place, and never consented to any recording.

The foregoing summarizes the testimony of Bilowz, Sweeney, and O'Neil which, with exhibits, was the Commonwealth's case.

For the defense, only Hanedanian testified. A motion in limine on the part of Hanedanian had asserted that the lawyers consented to the recording, and Hanedanian in his testimony in his own behalf repeated that he had secured such consent prior to the meeting. (The recording itself does not suggest or imply that it occurred by consent.) Hanedanian said he had the tape recorder in a bag and when he was driving to the meeting he drew it out, tested it by pressing the "play" and "record" but-

---

[3]Bilowz and Sweeney sought to raise a civil wiretap claim against Hanedanian in the Comware malpractice action, see G. L. c. 272, § 99 Q, but the court dismissed the claim. They tried again and the pleading again was dismissed. After the initiation of the criminal complaint against Hanedanian, the lawyers filed a fresh action against him on the same basis as the dismissed claim. This second action and the malpractice action were pending when the briefs were filed in the instant appeal of the criminal conviction.

tons, and before returning it to the bag pushed a "pause" button that suspended recording. At the meeting, the testimony went, he placed the recorder in plain view of the lawyers but did not consciously set it to record; it had apparently started to record of itself during the drive when the "pause" button was accidentally jostled in the bag and was disengaged.

As to the lawyers' testimony that he made the dire threat of retribution at the end of the meeting — a threat which, however, does not appear on the recording (suggesting Hanedanian manipulated the tape) — Hanedanian denied he made such a threat.

Finally, Hanedanian testified he did not know or suspect there was a recording of any part of the meeting until, by chance, his daughter, two years old, fooling around the house with sundry recordings, set off this particular recording and he heard it playing.

1. The defendant made the usual motions for a required finding of not guilty. The motions were rightly denied. The jury, on the basis of the lawyers' testimony and other proof offered by the Commonwealth, could readily find the defendant intentionally made a secret, unconsented-to interception of the oral communications of Bilowz (and Sweeney) in violation of the statute. The twists and turns of the defendant's testimony suggest he suffers from a profound underestimation of the intelligence of juries.

2. Although the Commonwealth has established defendant's violation of the literal statute, the defendant (by pretrial motions and otherwise) invited the court to read into the statute an unlegislated and unexpressed exception. The suggestion seems to be that the wiretap statute aims to protect citizens' privacy, and this is also an aim of the attorney-client privilege; therefore the client should not be punished for making a private recording of a conversation with his lawyer. The "therefore" misses connection. Allowing clients to make ad lib secret recordings of conversations with their lawyers would impair, not enhance, the classical relationship. By main force to read such an exception into the statute would seem a superbly foolhardy act. It would, incidentally, abuse the canon that the legislated, expressed exceptions to a statute (here the "exemptions" in G. L. c. 272, § 99 D, and definitional exclusions in § 99 B) are the only exceptions that may be recognized. See *General Elec. Co.* v. *Department of Envtl. Protection,* 429 Mass. 798, 805-806

(1999); 2A Singer, Sutherland Statutory Construction §§ 47:11, 47:23 (6th ed. 2000). The defendant merely plays on words when he goes on to argue, in essence, that because the client "controls" the privilege, i.e., is the one who may choose not to divulge the content of attorney-client conversations to outsiders, he must or should be allowed to exercise "control" to the point of wiretapping his unsuspecting lawyer.[4]

3. The court did not err in admitting the recording in evidence as part of the Commonwealth's case[5]; in instructing the jury on "willfulness" as an element in proof of guilt; and in exercising discretion to put reasonable limits on the cross-examination of Bilowz intended to show his bias as a witness, see *Commonwealth* v. *Joyce*, 382 Mass. 222, 231 (1981).

*Judgment affirmed.*

---

[4]Equally unpersuasive are the defendant's arguments that the failure of the otherwise plain words of the statute specifically to state its applicability to the attorney-client setting leaves it unconstitutionally vague; that the judge erred in refusing to instruct the jury that by definition no "interception" (see § 99 B 4) of an attorney-client communication occurs so long as the client consents to the recording; and that the attorneys as non-owners of the attorney-client privilege lack standing to complain of the secret recording.

[5]Even if it be assumed that Hanedanian's attorney-client privilege regarding the conversation could hold despite the alleged interception and prosecution therefor, compare *Commonwealth* v. *Alves*, 414 Mass. 1006 (1993); G. L. c. 272, § 99 D 2 e, the privilege was lost through divulgence of the content of the recording not later than the date Hanedanian's counsel handed over the recording to the defendants in the malpractice action by way of discovery.