COMMONWEALTH *vs.* JUAN A. MARTINEZ.

No. 05-P-368.

Hampden. February 8, 2006. - December 7, 2006.

Present: LENK, CYPHER, GRASSO, KANTROWITZ, & BERRY, JJ.[1]

*Controlled Substances. Identification. Due Process of Law,* Identification. *Constitutional Law,* Identification. *Evidence,* Identification, Photograph. *Practice, Criminal,* Argument by prosecutor.

A motion judge did not err in denying a criminal defendant's motion to suppress evidence of a photographic identification of him by an undercover police officer, where the officer's identification of the defendant as the person who had sold him heroin twenty minutes earlier, made from a single photograph taken by surveillance officers at the scene, was not impermissibly suggestive, given the nature of the crime involved (distribution of narcotics in a school zone) and corresponding concerns for public safety, the need for efficient police investigation in the immediate aftermath of the crime, and the usefulness of prompt confirmation of the accuracy of investigatory information. [791-795] BERRY, J., concurring in the result. LENK, J., concurring.

A motion judge did not err in denying a criminal defendant's motion to suppress a police officer's in-court identification of the defendant, where the Commonwealth met its burden of showing that the identification had a source independent of an allegedly suggestive photographic identification. [795-796]

A prosecutor's misstatements of fact during closing argument at a jury-waived criminal trial constituted harmless error when viewed in the context of the case as a whole. [796-797]

COMPLAINT received and sworn to in the Holyoke Division of the District Court Department on September 17, 2003.

A pretrial motion to suppress evidence was heard by *W. Michael Ryan*, J., and the case was heard by *William J. Boyle*, J.

---

[1]The case was originally heard by a panel comprised of Justices Lenk, Cypher, and Berry and was thereafter submitted on the record and briefs to Justices Grasso and Kantrowitz, all of whom took part in the decision of this case, in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974). See *Sciaba Constr. Corp.* v. *Boston*, 35 Mass. App. Ct. 181, 181 n.2 (1993).

*Sarah E. Dolven* for the defendant.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

CYPHER, J. After a jury-waived trial, a District Court judge found the defendant, Juan A. Martinez, guilty of distribution of heroin, G. L. c. 94C, § 32(*a*), and of distribution of heroin in a school zone, G. L. c. 94C, § 32J. The defendant appeals, arguing that (1) the motion judge improperly denied his motion to suppress a photographic identification of him based on a single photograph; (2) the in-court identification of the defendant by the police was invalid because it lacked a source independent of the prior identification; and (3) the prosecutor's misstatements of fact during her closing argument could have influenced the judge's decision, resulting in a substantial risk of a miscarriage of justice. We affirm.

*Factual background.* The evidence at trial included the following. On September 2, 2003, narcotics investigators from the Holyoke police department, in conjunction with State and local investigators from other agencies, were conducting undercover purchases of narcotics from street level dealers in Holyoke in connection with an investigation in the area. State Trooper Jeremy Cotton attempted to purchase narcotics, specifically heroin or "crack" cocaine, while detectives from the Holyoke police department maintained surveillance of Trooper Cotton.[2] One detective monitored Trooper Cotton visually while others monitored him through his undercover microphone, often referred to as a "body wire."

At approximately 7:20 P.M., Trooper Cotton parked his vehicle outside 139 Sargeant Street in Holyoke, an area known to members of the Holyoke police department as the site of multiple arrests for narcotics and other violations, and tried to make eye contact with some people who were gathered on the sidewalk.[3] Detective Jones watched the trooper from a church located directly across the street and "had a clear unobstructed

---

[2]Among others, Detective Joey L. Jones conducted visual surveillance of Trooper Cotton, while Detective Paul Barkyoumb conducted audio surveillance of Trooper Cotton.

[3]Sargeant Street was one of several areas within a three-block radius in which the police were conducting undercover buys.

view of that area." A person (later identified as the defendant in this case) approached the passenger side window of Trooper Cotton's vehicle, leaned inside, and had a conversation with the trooper. The defendant asked Trooper Cotton what he wanted, to which the trooper responded, "two bags." During this conversation, the defendant was "intently staring" at Trooper Cotton. The defendant entered 139 Sargeant Street and, shortly afterward, emerged and went directly over to Trooper Cotton's car.

Detective Jones observed the defendant reach toward Trooper Cotton, have "an exchange," and immediately approach another man who was standing in front of 139 Sargeant Street. The defendant had a second exchange with this man, and a second unidentified man entered 139 Sargeant Street.

Trooper Cotton later testified that when the defendant leaned into his car, he was holding heroin, which he then gave to the trooper after taking a prearranged sum of money. Trooper Cotton drove away from the area and radioed a description of the defendant to the other police officers involved in the surveillance. Trooper Cotton described the defendant as having a "skinny" build and short hair, and wearing long blue pants with a gray shirt.

After watching what appeared to be two additional narcotics transactions, Detective Jones saw the defendant walk away from the Sargeant Street address. Although Detective Jones briefly lost sight of the defendant, other members of the surveillance team, who had already seen the defendant, were able to locate him and take his photograph. The photograph was given to Detective Barkyoumb, who then met Trooper Cotton at a prearranged location some five or ten minutes away from Sargeant Street. Trooper Cotton gave the drugs to Detective Barkyoumb. Detective Barkyoumb showed the photograph of the defendant to Trooper Cotton and asked him whether "this was the individual that [he] had bought the heroin from." Trooper Cotton positively identified the defendant from the surveillance photograph as the person from whom he had just purchased the drugs.

The photograph was not introduced as an exhibit at trial or

used in any manner. Detective Jones and Trooper Cotton made in-court identifications of the defendant.

*Discussion.* 1. *The motion to suppress photographic identification.*[4] The defendant argues that Trooper Cotton's identification of the defendant was unduly suggestive, that there was no "good reason" to justify the one-on-one identification, and that the photographic identification tainted the in-court identification of the defendant. He bears the burden of proving by a preponderance of the evidence that the contested identification was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny him due process of law. *Commonwealth* v. *Martin,* 447 Mass. 274, 279-280 (2006). Once the defendant has met this burden, the Commonwealth is barred from introducing the identification, notwithstanding other indicia of reliability. *Commonwealth* v. *Johnson,* 420 Mass. 458, 463-465 (1995).

In denying the defendant's motion to suppress the photographic and in-court identifications of the defendant, the motion judge concluded that the defendant had failed to meet his burden of demonstrating by a fair preponderance of the evidence that the photographic identification of the defendant was impermissibly suggestive. See *Commonwealth* v. *Otsuki,* 411 Mass. 218, 232 (1991); *Commonwealth* v. *Sylvia,* 57 Mass. App. Ct. 66, 68 (2003). The judge further ruled that the police officers who also had witnessed the sale could rely on their own independent observations as well as on Trooper Cotton's broadcast description of the seller. Thus, the motion judge's ruling was that the in-court identification of the defendant as the person who had sold Trooper Cotton drugs had a source independent of the photographic identification, specifically Trooper Cotton's view of him during the drug sale as well as the observations of the surveilling detectives.

We agree with the judge and conclude that the photographic identification of the defendant by Trooper Cotton approximately twenty minutes after the exchange, from a single photograph

---

[4]Trooper Cotton was the only witness to testify at the motion to suppress hearing. Because of a recording failure, a transcript of his testimony at the hearing is not available. However, the parties have stipulated that his testimony at the hearing was substantially the same as his subsequent testimony at trial.

taken by surveillance officers at the scene, was not impermissibly suggestive. Compare *Commonwealth* v. *Austin*, 421 Mass. 357, 361 (1995) (identification procedure of showing witnesses a surveillance videotape was similar to a one-to-one confrontation between the suspect and the witnesses). We further conclude that even were that not so, Trooper Cotton's in-court identification of the defendant had an independent source and need not be suppressed. See *Commonwealth* v. *Day*, 42 Mass. App. Ct. 242, 250 (1997).

Although one-on-one photographic identifications are generally disfavored as inherently suggestive, they do not raise due process concerns unless it is determined that the procedure was unnecessarily or impermissibly suggestive. *Commonwealth* v. *Martin*, 447 Mass. at 279. "Whether an identification procedure is 'unnecessarily' or 'impermissibly' suggestive . . . involves inquiry whether good reason exists for the police to use a one-on-one identification procedure . . . ," *ibid.*, quoting from *Commonwealth* v. *Austin*, 421 Mass. at 361, and whether the police avoided any "special elements of unfairness, indicating a desire on the part of the police to 'stack the deck' against the defendant." *Commonwealth* v. *Leaster*, 395 Mass. 96, 103 (1985). See *Commonwealth* v. *Austin*, 421 Mass. at 361-362, and cases cited therein.

"Relevant to the good reason examination are [(1)] the nature of the crime involved and corresponding concerns for public safety; [(2)] the need for efficient police investigation in the immediate aftermath of a crime; and [(3)] the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track." *Commonwealth* v. *Austin, supra* at 362.

Here, the crimes involved were distribution of narcotics and distribution of narcotics in a school zone. It is apparent from the statutory scheme that the Legislature considers these crimes a serious threat to the community and public safety. Efficient police investigation in the aftermath of such crimes is essential not only to attempt to eradicate such behavior but also speedily and accurately to identify the suspects engaging in such activities.

Trooper Cotton made his undercover purchase, and provided

a detailed description of the defendant to the surveilling officers, approximately twenty minutes before he was shown the picture of the defendant. In addition, the picture was taken by police officers who were closely watching the interaction between Trooper Cotton and the person with whom he had the exchange, and the showing of the picture to the trooper within a very short time after the exchange was for the purpose of ensuring that the person photographed was the person with whom he had had the exchange — that is, to ensure the accuracy of the photograph and identification. Although officers could have assembled a full photographic array for Trooper Cotton to review, such measures would be unnecessarily burdensome, provide no palpable benefit to the defendant, and might delay the showing of the photograph to the trooper. "Failure of the police to pursue alternate identification procedures does not in itself render an identification unduly suggestive. The question is whether the police acted permissibly. The answer is not governed by the availability of another approach." *Commonwealth* v. *Martin*, 447 Mass. at 280. Furthermore, the time it would take to assemble such an array could further give rise to the increased possibility that "other images [would] crowd in." *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). As in *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. at 67-69, because the undercover purchase of drugs had occurred only a short time before, the police had good reason to show the trooper the single photograph of the defendant promptly rather than take the additional time necessary to assemble a full array. "[S]howups of suspects to eyewitnesses of crimes have been regularly held permissible when conducted by the police promptly after the criminal event." *Commonwealth* v. *Bowden*, 379 Mass. 472, 479 (1980), quoting from *Commonwealth* v. *Barnett, supra*.

As was stated in *Commonwealth* v. *Bumpus*, 354 Mass. 494, 501 (1968), cert. denied, 393 U.S. 1034 (1969), "[r]easonable [one-on-one identifications] of this type, in the course of (or immediately following) a criminal episode, seem to us to be wholly different from post-indictment confrontations . . . in serious crimes, after a significant interval of time . . . ." This is not a case where an eyewitness is shown a single mugshot or

other photograph from the past. This is a photograph taken immediately after the crime. The instant, just off-site, photographing of the perpetrator serves a similar investigative purpose as that of a video surveillance camera — to preserve the image of the perpetrator while simultaneously preserving the anonymity of the undercover officer. Taking contemporaneous photographs would seem to make proper identification of a perpetrator more, rather than less, likely. Showing the photograph to the officer who made the buy was obviously meant to eliminate the one possible error, that the photographing officer caught the wrong person. Moreover, the "identification" by the officer who made the buy is free from the elements of suggestiveness that one-on-one identification procedures are prone to: the officer knows the circumstances of taking the photograph and that his confirmation that the other officers photographed the right person is intended to safeguard against any possible error.

Further, the defendant failed to demonstrate any "special elements of unfairness," *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. at 69, quoting from *Commonwealth* v. *Leaster*, 395 Mass. at 103, in the police's use of the defendant's photograph. There is no merit to the defendant's claim that Trooper Cotton was encouraged to identify the defendant as the seller or was given any information that would lend itself to a reasonable interpretation of unfairness. When Detective Barkyoumb showed the single photograph of the defendant to Trooper Cotton, he merely asked him whether the defendant "was the individual that [he] had bought the heroin from."

The defendant's photograph was used to confirm the accuracy of their investigatory information. In doing so, the police were simultaneously taking procedural safeguards to make certain that once their undercover investigation came to a close they did not arrest and charge the wrong person and to preserve the anonymity of an undercover operative. Although not mandatory, this type of identification by the police is consonant with art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution, and is also an example of diligent police work. The defendant's suggestion that the result of the procedure was to "stack the deck" against him is without merit. Finally, the police had a legitimate

investigatory interest and thus good reason to identify the defendant as quickly as possible while his image was still fresh in the officer's mind; in this way, they could eliminate the possibility of error, complete their investigation, and plan their arrest strategies accordingly.[5] See *Commonwealth* v. *Barnett*, 371 Mass. at 92 ("prompt confrontation yielding a negative result, besides freeing the innocent, informs the police that a possible predisposition on their part is or may be in error and releases them quickly to follow another track"); *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. at 69.

2. *In-court identification.* We also conclude that the Commonwealth met its burden of showing that Trooper Cotton's in-court identification of the defendant had an independent source. Trooper Cotton, a trained narcotics investigator working in an undercover capacity, was "obviously alert and using every opportunity he had to observe [the defendant] at the time of the [heroin] purchase." *Commonwealth* v. *Russell*, 19 Mass. App. Ct. 940, 942 (1985). There was evidence that Trooper Cotton had an opportunity to look at the defendant when the defendant leaned into his opened car window and engaged in a hand-to-hand, face-to-face exchange with him. In addition, Detective Jones had the defendant under surveillance before, during, and after the undercover purchase made by Trooper Cotton and testified on the record that he could see the defendant's profile on one occasion and had a clear view of the defendant's face on another occasion, and provided a detailed description of him. Both Trooper Cotton and Detective Jones, who were trained in undercover work, had ample opportunity to observe the defendant and identify him at trial. See *Commonwealth* v. *Sampson*, 7 Mass. App. Ct. 514, 519-520 (1979) (out-of-court identifications within one hour of a crime by experienced officers who had a clear view of the defendant's face for five to ten seconds was reliable). As in *Commonwealth* v. *Russell, supra*, "[t]his was not an instance of only a fleeting, unexpected sight of a suspect . . . . [The police officer] took prompt steps to

---

[5]For example, were the police to identify the defendant as someone with a violent past including numerous convictions on assault and weapons charges or with open warrants, they would likely respond differently than if the defendant had no criminal history at all.

confirm his initial identification . . . by examination of the
. . . picture [of the defendant]." This more than sufficiently
demonstrates that the Commonwealth met its burden by clear
and convincing evidence that the identification of the defendant
had an independent source. See *Commonwealth* v. *Wen Chao
Ye,* 52 Mass. App. Ct. 850, 854-856 (2001).

3. *Closing argument.* The defendant claims that the prosecu-
tor made misstatements of fact during her closing argument
when she stated that Detective Jones had the defendant in view
at all times, including when his photograph was taken by the
"identification car," and that these misstatements could have
influenced the judge's decision. As the defendant did not object,
he must establish that any alleged error in the prosecution's
closing argument was sufficiently significant in the context of
the trial to show that the result might have been different but
for the error, thereby constituting a substantial risk of a miscar-
riage of justice. See *Commonwealth* v. *Remedor,* 52 Mass. App.
Ct. 694, 699, 701 (2001). See also *Commonwealth* v. *Miranda,*
22 Mass. App. Ct. 10, 21 (1986). The defendant's claim that the
prosecutor's misstatement of fact about the "identification car"
influenced the judge is not persuasive.

Defense counsel objected at trial to the prosecutor's misstate-
ment that Detective Jones always had him in view, and the is-
sue is therefore preserved for review under the prejudicial error
standard. See *Commonwealth* v. *Rosario,* 430 Mass. 505, 515
(1999). Under that standard, the Commonwealth bears the
burden to show with fair assurance that the judgment was not
substantially swayed by error. See *Commonwealth* v. *Rosado,*
428 Mass. 76, 79 (1998). Even though the prosecutor's state-
ment was erroneous, the error was harmless when viewed in the
context of the case as a whole. See *Commonwealth* v. *Rosario,
supra.* This case was a jury-waived trial. Absent evidence to the
contrary, a trial judge acting as trier of fact is presumed to ap-
ply correct legal principles to the evidence. See *Commonwealth*
v. *Colon,* 33 Mass. App. Ct. 304, 308 (1992). It is entirely
reasonable to assume that the trial judge realized that the
prosecutor's misstatements did not have evidentiary value. See

*Commonwealth* v. *Ortiz*, 431 Mass. 134, 141 (2000); *Commonwealth* v. *Montanez*, 439 Mass. 441, 449-450 (2003).

*Judgments affirmed.*

BERRY, J. (concurring in the result). I concur in the judgment affirming the convictions because I agree that there was an independent basis for the in-court identifications of the defendant by Trooper Cotton and the surveillance police officer. See *ante* at part 2. However, I do not agree with, and do not concur in, that part of the majority opinion which holds that the photographic identification was not unconstitutionally suggestive. See generally *Commonwealth* v. *Johnson*, 420 Mass. 458 (1995).

1. *The single-photograph identification procedure.* In a recent case, *Commonwealth* v. *Martin*, 447 Mass. 274, 279-284, 294-310 (2006) (*Martin*), there is extensive analysis by our Supreme Judicial Court of the constitutionality and suggestiveness of one-on-one identifications, the per se rule for exclusion of identifications obtained by suggestive means set forth in *Commonwealth* v. *Johnson*, *supra* at 462-472, and the parameters of the good reason/cause standard for conducting a one-on-one identification enunciated in *Commonwealth* v. *Austin*, 421 Mass. 357, 361-362 (1995) (*Austin*). There is no need, then, to restate governing principles powerfully explored by the justices of the Supreme Judicial Court in both the majority and dissenting opinions in the *Martin* case. I would simply note that, in my view, the singular photographic identification technique employed by law enforcement in this case does not meet either the good reason or the necessity standard discussed in the majority and the dissent, respectively, in *Martin*. The majority in *Martin* reaffirmed the court's holding in *Austin*, stating that "[t]he court agrees that the *Austin* case requires that there be good reason for the use of a showup [or one-on-one procedure] for identifying a suspect." *Martin*, 447 Mass. at 282. The dissent in *Martin* was in accord on the requirement of good reason, but would also assess whether the one-on-one identification procedure was necessary. "Showups [and one-on-one photo-

graphic identification displays] constitute a suggestive identification procedure. The issue is whether the showup [or one-on-one identification procedure] was unnecessary," *id.* at 307 (Cordy, J., dissenting),[1] or, stated slightly differently, whether the government has advanced "some articulable need" for conducting a one-on-one identification procedure. *Id.* at 301, 307.

In this case, there was no demonstration of either good reason or any particular necessity offered by the Commonwealth to support the single-photograph identification display. From all that appears of record, the presentation was done that way simply because it was done that way. I believe that, in the circumstances here presented, the use of a single photograph, rather than an array, with no justification discernible from the record warranting that singular display, is not constitutionally sustainable. There was no reason the police could not have assembled an array of photographs within a short period of time while the image was still fresh in the trooper's mind.[2]

The flaw in the particular single-photograph identification

---

[1]With respect to a showing of good cause/reason or necessity for the singular identification procedure, the dissent in *Commonwealth* v. *Martin*, 447 Mass. 274, 301-302 (2006) (Cordy, J., dissenting), states as follows:

> "[T]he support for the good cause requirement adopted in [*Commonwealth* v. *Austin*, 421 Mass. 357, 361-362 (1995),] comes from 1 W.R. LaFave & J.H. Israel, Criminal Procedure § 7.4(b), at 581 (1984). In § 7.4(b), the authors explain how to determine whether any identification procedure is unnecessarily suggestive. The 'inquiry can . . . be broken down into two constituent parts: that concerning the suggestiveness of the identification, and that concerning whether there was some good reason for the failure to resort to less suggestive procedures.' They continue: '*Assuming suggestive circumstances*' (the court here concedes, as it must, that one-on-one identifications are inherently suggestive), '*the question then is whether they were impermissible or unnecessary.*' This inquiry turns on whether there was *some articulable need to hold a showup.* See *id.* at 581-582 (*describing this part of the test as the 'Stovall necessity' test*)." (Emphases supplied.)

[2]Moreover, the majority seems to assume that the procedure ensures the absence of any error. However, it should be noted that the photograph in this procedure was taken after, not during, the alleged crime. Further, there may be multiple persons present at the scene; police officers are not infallible and may make mistakes as any fallible human being may; and, as happened here, the photographing officer may not keep the perpetrator continuously in view.

procedure employed in the instant case is not the only problem that causes me to write. There is a larger problem involving an emerging pattern of law enforcement using this kind of unitary photographic identification process which, I believe, trenches on the due process right to a fair identification in criminal cases. "The Due Process Clause . . . forbids [an identification procedure] that is unnecessarily suggestive . . . ." *Kirby* v. *Illinois,* 406 U.S. 682, 691 (1972). Accord *Stovall* v. *Denno,* 388 U.S. 293, 301-302 (1967). Where law enforcement conducts a one-on-one pretrial identification, there are due process concerns if that procedure "is determined to be *unnecessarily* suggestive. Whether an identification procedure is 'unnecessarily' or 'impermissibly' suggestive . . . involves inquiry whether good reason exists for the police to use a one-on-one identification procedure . . . ." (Emphasis original.) *Austin,* 421 Mass. at 361.

At the oral argument in this appeal, the Commonwealth (forthrightly) acknowledged that the single-photograph identification technique utilized in this case is being commonly used in street sweep drug investigations in the geographic area involved in this appeal. That identification technique is as follows. A number of law enforcement officers assemble to conduct an investigation of drug sales in a targeted street area. An officer is (or officers are) to work undercover. An "identification team" is assigned to work out of an "identification car." The undercover police officer engages in an exchange with a person on the street. The identification team (it is not clear whether sua sponte, or on cue from the undercover agent) moves in to take an "instant photo[graph]" of the person with whom the undercover agent has interacted. Then, the undercover officer proceeds to a predetermined location, where the officer is shown only one photograph, i.e., the instant picture just taken by the identification team. Further, in this case, at the time of the display, the officer from the identification team who displayed the single photograph to Trooper Cotton pointedly asked "specifically if this was the individual that [Trooper Cotton] had bought the heroin from, and [the trooper] stated, 'yes.' "

The particular practice in this case (and the emerging general

pattern) implicates and, in my judgment, treads upon the due process constitutional protections that ensure that identifications in criminal cases not be unnecessarily suggestive, including prohibiting the suggestiveness inherent in the display of just one photograph to an identifying witness, in this case, the undercover officer. However, in upholding this one-on-one photographic identification technique on the ground that there was good reason for it, the majority reasons that "[i]t is apparent from the statutory scheme [involving interdiction of illegal drugs] that the Legislature considers [distribution of narcotics and the distribution of narcotics in a school zone] a serious threat to the community and public safety. Efficient police investigation[3] in the aftermath of such crimes is essential not only to attempt to eradicate such behavior but also speedily and accurately to identify the suspects engaging in such activities." *Ante* at 792. That drugs are an evil and a scourge on society, and that law enforcement need be vigilant, does not warrant the suspension of constitutional guarantees that prohibit unnecessarily suggestive identification procedures.[4]

Where identification is at issue, "we must require the fairest identification procedures available under the circumstances. With the stakes so high, due process does not permit second best." *Commonwealth* v. *Johnson,* 420 Mass. at 465, quoting from *Wright* v. *United States,* 404 F.2d 1256, 1262 (D.C. Cir. 1968) (Bazelon, C.J., dissenting). To this end, the Supreme Judicial Court in the *Johnson* case affirmed the more stringent per se rule of exclusion of unnecessarily suggestive identifications as a matter of Massachusetts constitutional law, rejecting the Federal reliability test adopted by the United States Supreme Court in *Manson* v. *Brathwaite,* 432 U.S. 98, 114 (1977). One

---

[3]As Justice Cordy observed in his dissenting opinion in *Commonwealth* v. *Martin,* 447 Mass. at 308, it very well may be that a one-on-one identification procedure "is more efficient than many other identification procedures. But this would be true in a large number of investigations. It cannot be seriously contended that something inherently and generally true of almost all showups [and other forms of one-on-one identification procedures] can provide the constitutionally required good reason to justify the use of such a disfavored identification procedure in the present case."

[4]Moreover, that it was a police officer, rather than a lay person, who was shown an unnecessarily suggestive photograph does not, of course, trump overarching constitutional protections.

of the reasons for the court's preservation of the per se rule under our State constitution was that "the reliability test does little or nothing to discourage police from using suggestive identification procedures. One commentator has noted that 'under *Brathwaite*, the showup has flourished, because the totality approach has failed to discourage this practice. As a deterrent to suggestive police practices, the Federal standard is quite weak. Almost any suggestive [identification procedure] will still meet reliability standards.' " *Commonwealth* v. *Johnson*, 420 Mass. at 468, quoting from Note, Twenty-Years of Diminishing Protection, 15 Hofstra L. Rev. 583, 606 (1987).

In light of the *Johnson* analysis that a per se rule would more effectively deter the use of suggestive identifications, there is a certain irony that, in this case, the use of singular photographic displays without any demonstrated good reason or necessity is not deterred at all, but rather is held constitutionally acceptable. Respectfully, I do not believe that the rationales posited in the majority for upholding this identification investigative technique withstand constitutional scrutiny. For example, the majority writes that "[a]lthough officers could have assembled a full photographic array for Trooper Cotton to review, such measures would be unnecessarily burdensome [and] provide no palpable benefit to the defendant," *ante* at 793, and that "the time it would take to assemble such an array could further give rise to the increased possibility that 'other images [would] crowd in,' " *ibid*. These purported justifications — burdensomeness, lack of benefit to a defendant (a dubious proposition), and risk of additional images floating into the mind's eye of the undercover agent — are simply untenable.[5] These reasons, without any basis in law or fact, would theoretically apply to every identification case, and would provide the means to dispense with a fair and balanced photographic array in any and all cases. See note 2, *supra*, and accompanying text.

I also disagree with the majority conclusion that there is not

---

[5]The defendant was not arrested at the time of the hand-to-hand buy, but rather some two weeks later. An array could have been compiled, rather than the single-shot photograph shown to the undercover trooper approximately twenty to thirty minutes after the drug transaction. Nor does the record reflect any good cause unique to this kind of drug investigation.

an inherent and unnecessary unfairness in this kind of one-to-one photographic show up procedure. The majority writes that the "defendant failed to demonstrate any 'special elements of unfairness,' " *ante* at 794, in that the defendant did not show that Trooper Cotton was "encouraged to identify the defendant as the seller or [was] given any information [during the single display of the single photograph] that would lend itself to a reasonable interpretation of unfairness," *ibid.* This misses the mark in a one-on-one photographic identification procedure. Absent good reason justifying a departure from constitutional standards for a nonsuggestive identification, the inherent unfairness and unnecessary suggestiveness arise from the utilization of the one-on-one photographic presentation itself.

For these reasons, I do not concur in that part of the majority opinion that holds that the single-photograph identification procedure was not unconstitutionally suggestive.

2. *Independence of the in-court identification.* Having diverged from the majority regarding the undue suggestiveness of the identification procedure, I turn to the issue whether suppression of the in-court identification is compelled. I conclude not, and I agree with the majority in this respect.[6] I am convinced, as is the majority, that the trial record establishes by clear and convincing evidence that the in-court identifications by Trooper Cotton (as well as by the other surveillance officer who testified) had independent sources.

> "[I]n determining whether a separate identification has a source independent of the unnecessarily suggestive identification, the judge considers the following factors: '(1) The extent of the witness'[s] opportunity to observe the defendant at the time of the crime; prior errors, if any, (2) in description, (3) in identifying another person or (4) in failing to identify the defendant; (5) the receipt of

---

[6]The majority, *ante* at 791-792, determines "that the photographic identification of the defendant by Trooper Cotton approximately twenty minutes after the exchange from a single photograph taken by surveillance officers at the scene, was not impermissibly suggestive . . . [and] further conclude[s] that even were that not so, Trooper Cotton's in-court identification of the defendant had an independent source and need not be suppressed. See *Commonwealth* v. *Day*, 42 Mass. App. Ct. 242, 250 (1997)."

other suggestions, and (6) the lapse of time between the crime and the identification.' "

*Commonwealth* v. *Johnson*, 420 Mass. at 464, quoting from *Commonwealth* v. *Botelho*, 369 Mass. 860, 869 (1976).

Applying the *Johnson* factors, there was a strongly supported factual basis in yielding an independent source for the in-court identification. Trooper Cotton (who viewed the single photograph) had face-to-face contact with the defendant and was clearly able to observe what the defendant looked like — and indeed radioed in a description of the defendant and his attire. Compare *Commonwealth* v. *Russell*, 19 Mass. App. Ct. 940, 942 (1985) (where the identifying police officer had ample time to observe the seller of the drugs, there was "no persuasive ground for treating the identification of Russell as tainted by any unnecessarily suggestive procedure. . . . The officer was an experienced undercover police officer, obviously alert and using every opportunity he had to observe Russell at the time of the capsule purchase"); *Commonwealth* v. *Sylvia*, 57 Mass. App. Ct. 66, 68-70 (2003) (in-court identification by an officer had a demonstrated independent source in light of the opportunity the officer had to view the defendant during an undercover drug transaction, even though the police officer returned to the station and viewed a booking photograph of the defendant).

LENK, J. (concurring). Mindful that the good reasons set forth in the majority opinion to justify police use of the single-photograph identification procedure are not to be found in the record or even in the Commonwealth's brief, I am less than sanguine about the procedure and its use in the circumstances. Nonetheless, being persuaded that the in-court identification had an independent source, I concur in the result.