MacDonald, D. Lloyd, J.
Before the Court are parallel motions to suppress statements and photo identifications of the two defendants. A hearing was held on July 30, 2007. The Commonwealth called Sgt. Daniel Sullivan (“Sgt. Sullivan” or “Sullivan”) of the Westport Police Department as its sole witness. The defendants called no witnesses. Black and white copies of the 8 1/2" x 11" color digital images of the defendants that were used in the identifications were introduced as Exhibits 1 and 2. A similar copy of a photo of the victim was introduced as Exhibit 3.
The motions are DENIED for the reasons that follow.
Findings of Fact
Sgt. Sullivan is a 15-year veteran of the Westport Police Department.
At approximately 6 a.m. on June 3, 2006 Sullivan was awoken at home and responded to the report of a stabbing at a remote laneway in the vicinity of Briggs Road in Westport. When he arrived at the scene, he was briefed by Westport Police Officer Mello that a New Bedford cab driver, Gregory Kendrick, had been abducted from New Bedford, driven to Westport and attacked and stabbed by two assailants. At that juncture the victim had already been transported from the scene by ambulance. The victim had described his assailants as a light-skinned Hispanic male and a dark-skinned male.
Sgt. Sullivan was further informed that the victim, who worked for Blue Bird Cab Company, earlier that evening had picked up two individuals who asked to go to 142 Reynolds Street in New Bedford. Later the victim received a call to Ruth Street in New Bedford and picked up the same two individuals. Once in the car, the two individuals attacked him and hijacked the cab. One male drove the cab while the other held a knife to the victim on the back floor of the cab. The victim did not know where they took him, but he described that they eventually stopped on a remote rural road. He overheard one of the men say in substance, “We do not want to leave any witnesses."
The victim was pulled from the back of the car and stabbed several times, but the victim fought back and escaped. The victim made it to the Westport Fire Department station on Briggs Road and a call was placed to the Westport Police Department at 5:15 a.m. The assailants fled with the cab.
After leaving the scene, Sullivan, accompanied by Westport Police Sergeant Cestidio (“Cestidio”), proceeded to St. Luke’s Hospital in New Bedford and spoke with the victim. He was in contact and alert. He confirmed the description of the assailants as one dark skinned and one light skinned. The officers then went to the Bluebird Cab Company and determined that the victim’s last pick-up was at 103 Ruth Street in New Bedford. They then proceeded to Ruth Street. Before they entered 103 Ruth Street, an unknown older woman on the sidewalk told them that they should check the third floor. The identity of this person was not subsequently determined.
103 Ruth Street was a three-stoiy residential building with an apartment on each floor and a common entiy way. The officers entered the building and walked up to the third-floor landing, knocked on apartment 3 and a female opened the door. The female, who identified herself as “Paula,” was later identified as Paula Calisto. She said she was the tenant of the apartment.
The officers asked Paula if there was anyone else in the apartment, to which she answered, “No one.” Cestidio asked her what was behind a closed door he could see from the entry way. She said she had a friend inside. The officers asked if she minded if they could check, and she replied, “Not at all.” Upon the door being opened, the officers found the defendants sleeping on a large bed. They were dressed. The officers woke up the defendants, but it took them about 10 minutes to rouse themselves effectively from sleep.
The defendants and their clothing matched the general description Sullivan had been given of the assailants.
After the defendants pulled themselves together, the officers spoke with them separately for about 15 to 20 minutes: Cestidio spoke with Gomes and Sullivan spoke with Blake.
Asked what he had done the prior night, Blake said that they had gone to a couple of friends’ houses. Asked by Sullivan whether they had taken a cab, Blake answered affirmatively.
No Miranda warnings were given, Sullivan stated, because the defendants at that point were not in custody.
The defendants were then asked whether it was okay for the officers to take their pictures. They consented, and digital pictures were taken. The officers then left the premises and returned to the Westport Police headquarters, where the digital images were downloaded and printed as 8 1/2" x 11" color images.
Meanwhile the victim was released from the hospital and was transported to the Westport P.D. When the victim arrived at the police station around 1 p.m., Sullivan showed the victim the two photographs and asked him if he knew the individuals. The victim *224 immediately responded, “Those are the two that attacked me.”
As to why he did not arrange an array of photos before showing the two pictures to the victim, Sullivan said that to do so would have taken about an hour to an hour and a half, and he believed that to wait would have compromised the investigation. The defendants were not in the Westport Police’s “in-house” photo ID system. Sullivan would have to have accessed the Registry of Motor Vehicles system. The Registry’s and the Westport in-house photos have different background colors to the photo images obtained of the defendants, so the fresh photos of the defendants would have stood out.
Once the victim made the identification, the West-port officers went to the New Bedford Police Department for assistance and then proceeded to 103 Ruth St. to arrest the suspects. At 103 Ruth St., officers knocked and Paula once again answered the door and let them in. Police found only Blake in the apartment with Paula. Blake was arrested. Gomes was arrested later.
Relevant Legal Principles
Entry to the Ruth Street Premises
The Commonwealth has the burden of proof to demonstrate that the warrantless entry was reasonable. Commonwealth v. Phillips, 413 Mass. 50, 55 (1992).
The Fourth Amendment recognizes as valid a war-rantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority of the area in common with a co-occupant who later objects to the use of the evidence obtained. Georgia v. Randolph, 547 U.S. 103 (2006). Under both the Fourth Amendment and Article 14, the test for determining consent is whether, based on the totality of the circumstances, a man of reasonable caution would be warranted in believing consent had been given. See Commonwealth v. Angivoni, 383 Mass. 30 (1981); Commonwealth v. Cantalupo, 380 Mass. 173, 178 (1980).
Consent must be given by a person who possesses actual authority over the area or, based on the totality of the circumstances, possesses apparent authority over the area or effects to be searched. See Commonwealth v. Maloney, 399 Mass. 785, 787-88 (1987); Commonwealth v. Wahlstrom, 375 Mass. 115, 118 (1978); Commonwealth v. Moorse, 54 Mass.App.Ct. 334, 337 (2002). The test for apparent authority is whether, possessed with the facts known to the police at the time of the search, a person of reasonable caution would believe that the consenting party had authority over the property. Illinois v. Rodriguez, 497 U.S. 177, 188 (1990).
In addition, consent must be freely and voluntarily given and not as the result of being coerced or of acquiescing to a claim of lawful authority, express or implied. Commonwealth v. Rogers, 444 Mass. 234 (2005).
The Photo Identification
In order to suppress an identification, the defendant must show by a preponderance of the evidence that, in the light of the totality of the circumstances, the procedures employed in the identification were so unnecessarily or impermissibly suggestive and conducive to irreparable misidentification as to deny the defendant due process of law. Commonwealth v. Botelho, 369 Mass. 860, 866 (1976). However, one-on-one or show-up identifications, similar to the identification in this case, are disfavored because they are viewed as inherently suggestive. See Commonwealth v. Johnson, 429 Mass. 458, 461 (1995); Commonwealth v. Santos, 402 Mass. 775, 781 (1988). See also Stovall v. Denno, 388 U.S. 293, 301-02 (1967).
Although exigent or special circumstances are not a prerequisite to one-on-one identifications, good reason must exist if such an identification is to pass muster. Commonwealth v. Austin, 421 Mass. 357, 361 (1995). Factors relevant to “good reason” include: the nature of the crime involved and the corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of the crime; the usefulness of prompt confirmation of the accuracy of investigative information, which, if in error, results in the freeing of innocent people and releases the police quickly to follow other leads. Austin, 421 Mass. at 362. See e.g. Commonwealth v. Sylvia, 57 Mass.App.Ct. 66, 68-69 (2003) (where drug purchase had occurred only a short time earlier, the police had a good reason to show the officer a single photograph rather than take additional time to assemble a full array). The good reason inquiry does not require a showing that the one-on-one identification was necessary, only that the police have good cause for their actions. Commonwealth v. Martin, 447 Mass. 274, 280 (2006).
In addition, prompt confrontation allows a witness to identify a suspect while the incident is still fresh in his mind and before other images crowd in or before a witness’s efforts to verbalize his impressions distort the witness’s authentic recollection. Commonwealth v. Leaster, 395 Mass. 96, 103 (1985). See also Commonwealth v. Barnett, 371 Mass. 87, 92-93 (1977) (identification on the same night of crime is prompt); Commonwealth v. Hill, 64 Mass.App.Ct. 131, 133-34 (2004) (twenty-four-hour time lapse between the crime and identification allowed the victim to see the suspect while the face of the intruder was still fresh in his mind). The delay necessary to assemble a full photographic array could result rn the increased possibility that “other images [would] crowd in” leading to a false identification by the witness. Commonwealth v. Martinez, 67 Mass.App.Ct. 788, 793 (2006).
Furthermore, the failure of police to pursue alternative identification procedures, however, does not in *225 itself render a one-on-one identification unduly suggestive. Martin, 447 Mass. at 280 (“Although officers could have assembled a full photographic array for Trooper Cotton to review, such measures would be unnecessarily burdensome, provide no palpable benefit to the defendant, and might delay the showing of the photograph to the trooper”). The focus is on whether the police acted permissibly, not whether an alternative would have been better. Id.
Rulings of Law
The Commonwealth met its burden of proof that the warrantless entiy into the Ruth Street apartment was reasonable.
Paula Calisto, as leaseholder of the third-floor apartment at 103 Ruth Street, had actual authority to allow police to enter her apartment to check inside the bedroom with the closed door. See Commonwealth v. Voisine, 414 Mass. 772 (1993) (a woman who was the lessee of the premises and with whom the defendant had stayed overnight two or three times in the days prior to his arrest had the authority to give consent); Commonwealth v. Sanna, 424 Mass. 92, 97-98 (1977) (defendant’s father, who owned the house and was present at the time of police entiy, validly consented to a warrantless search of home).
Further, she had reasonable apparent authority to admit the police.
There is no evidence that Paula Calisto was coerced by Sullivan or Cestidio or acquiesced to their claim of authority. She freely and voluntarily consented to their entry into her apartment and to the bedroom where the defendants were sleeping.
There was no need for the defendants to be given Miranda warnings after they were awoken in Calisto’s apartment because they were not in custody. “(T]he safeguards prescribed by Miranda become applicable [only] as soon as a suspect’s freedom of action is curtailed to a ‘degree associated with formal arrest.’ ” Commonwealth v. Kirwan, 448 Mass. 304, 309 (2007), quoting Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Thus, Miranda warnings only become necessary when a person is subject to custodial interrogation. Commonwealth v. Jung, 420 Mass. 675, 688 (1995). At the time they were questioned, the defendants were not under arrest, as conclusively demonstrated by the fact that the police left them at the apartment upon finishing their questioning.
At most, the defendants were detained in the apartment pursuant to the equivalent of a Terry stop. Terry v. Ohio, 392 U.S. 1 (1968). As a general rule, Miranda does not apply to Terry stops so long as the threshold detention and inquiiy pertains to the purposes of the stop and is intended to verify or dispel a reasonable suspicion of criminal activily. Berkemer, 468 U.S. at 439-40. The possibility that an incriminating response might follow a question “intended as a preliminary effort to confirm or dispel a suspicion” does not necessarily elevate the nature of questioning to a custodial level. Kirwan, 448 Mass. at 313. The police inquiiy of the defendants while in the apartment were part of such a preliminary effort.
Here, the police had good cause to proceed with a one-on-one show-up. At that juncture two armed hijackers were at large who had stabbed a kidnapped victim, under circumstances consistent with an intent to kill him. The police acted reasonably in concluding that a prompt identification by the victim using fresh photo images was necessary to allow police to investigate the crime with speed, efficiency and accuracy. Had the victim not identified the defendants in the pictures, the police would have been able to exclude them as suspects and follow other leads to get the actual perpetrators.
Additionally, although the police could have created a wider photographic array, there would have been delay of at least an hour to do so. Given the proximity in time between the crime and when the police took the pictures of the suspects, it was likely that their physical appearance as caught in the photos was the same as it had been at the time of the crime. Thus, it was also likely that if the suspects were in fact the assailants, the victim would have been able most reliably to identify them at that juncture. The more time passed, the more remote the victim’s memoiy would become and the more likely that he be exposed to “other images,” which would have increased the risk of a false identification. Commonwealth v. Martinez, 67 Mass.App.Ct. 788, 793 (2006).
There was no unreasonable suggestiveness in the identification process at issue.
ORDER
The defendants’ motions to suppress are DENIED.