NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-35                                              Appeals Court

COMMONWEALTH vs.  JASON C. CARLSON.

No. 17-P-35.

Worcester.       November 15, 2017. - February 6, 2018.

Present:  Wolohojian, Massing, & Wendlandt, JJ.


Larceny.  Identification.  Constitutional Law, Identification.
    Due Process of Law, Identification.  Evidence,
    Identification.  Practice, Criminal, Motion to suppress.


    Indictment found and returned in the Superior Court
Department on January 21, 2014.

    A pretrial motion to suppress evidence was heard by Daniel
M. Wrenn, J., and the case was tried before Richard T. Tucker,
J.


    Geraldine C. Griffin for the defendant.
    Donna-Marie Haran, Assistant District Attorney, for the
Commonwealth.


    WOLOHOJIAN, J.  A pawnbroker, after a single-photograph

identification procedure, identified the defendant as the man

who had some days earlier pawned certain items of stolen

jewelry.  The pawnbroker's identification was an important part

of the evidence at the defendant's jury trial, which resulted in his conviction of larceny over $250.[1]  The central issue on appeal is whether the defendant's motion to suppress the pawnbroker's identification should have been allowed because the single-photograph identification procedure violated the defendant's rights under art. 12 of the Massachusetts Declaration of Rights.  Concluding that the motion should have been allowed, we reverse the judgment.

We summarize the facts found by the motion judge, supplemented by undisputed evidence introduced at the evidentiary motion hearing.  See Commonwealth v. Dew, 478 Mass. 304, 305 (2017).  Pauline and Emile Daigle, a couple in their seventies, hired a professional moving company to move from their single-family home in Templeton to a condominium unit in Hubbardston on August 31, 2013.  The next day, Pauline Daigle reported to police that seventeen pieces of jewelry valued at approximately $30,000 were missing; only empty boxes remained in the dresser drawers where she had stored the jewelry.

Templeton police Detective Derek Hall opened an investigation into the theft.  He learned that two moving men had handled the move:  Ronny Norton and the defendant.  Norton

---

[1] The defendant was indicted for larceny over $250, G. L. c. 266, § 30, as a common and notorious thief, G. L. c. 266, § 40.  After trial, but before sentencing, the Commonwealth dismissed the latter portion of the charge.

was a long-time employee of the moving company; the defendant, by contrast, had been employed for the day.  Norton told Hall that the defendant had been alone in the Templeton bedroom where the jewelry had been stored and also when he (the defendant) had unpacked the bedroom dresser drawers at the end of the move in Hubbardston.  Norton also said that when he gave the defendant a ride home after the move, the defendant asked to be dropped off instead at a pawn shop named Sam and Friends.  This request struck Norton as odd for two reasons.  First, the pawn shop was only two doors away from the defendant's home.  Second, when Norton asked why the defendant was going to the pawn shop, he stated that he was going to pay for a car radio.  Norton, though, knew the defendant did not have a car.  In any event, Norton dropped the defendant at the pawn shop as he requested.

On September 2, 2013, Hall continued his investigation by going to the pawn shop, where he spoke with its owner, Euidong Do, and asked whether anyone had come into the store on the day of the move in order to pawn or sell anything.  Do said that a man, with whom Do had previously dealt at a different store,[2] had come in to the shop around 3:00 P.M. wanting to sell jewelry. Do was unwilling to buy the jewelry because the man did not have

---

[2] The defendant, as the Commonwealth concedes, is correct that the motion judge's finding that Do told Hall that the man was "an individual fitting the description of the defendant" was not supported by the evidence and is clearly erroneous.

photographic identification; therefore, Do only agreed to hold the jewelry as collateral for a three-week loan, i.e., the jewelry was pawned.

Do asked whether Hall had a picture of the suspect. Hall produced a photograph of the defendant and showed it to Do. At that point, Do positively identified the defendant as the person who had come into the shop and pawned jewelry on the day of the move. Do then gave Hall an envelope containing the pawned jewelry. Hall took the jewelry and later showed it to Pauline Daigle, who identified the pieces as among those taken during the move.

The defendant argues that the judge erred in denying his motion to suppress Do's identification, which was made as a result of the single-photograph display conducted two days after the theft and in response Do's request to see a photo of the "suspect." For constitutional purposes, a one-photograph identification is the equivalent of an in-person, one-on-one identification (often referred to as a "showup"). See Commonwealth v. Nolin, 373 Mass. 45, 51 (1977); Commonwealth v. Forte, 469 Mass. 469, 477 (2014). One-on-one identification procedures are generally disfavored as inherently suggestive. See Dew, 478 Mass. at 306. To succeed in suppressing evidence of such an identification, however, the defendant must prove by a preponderance of the evidence that the police procedure was

"so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] due process of law."  Id. at 306-307 (quotation omitted).

"In assessing the suggestiveness of an identification, we consider 'whether good reason exists for the police to use a one-on-one identification procedure."  Forte, 469 Mass. at 477, quoting from Commonwealth v. Austin, 421 Mass. 357, 361 (1995).  "The existence of 'good reason' for a showup identification is a question of law to be decided by an appellate court, based on facts found by the motion judge."  Dew, 478 Mass. at 307.  The "good reason" analysis "cannot be generalized," and "[e]ach case must be resolved on its own peculiar facts."  Austin, supra at 362.  See Commonwealth v. Odware, 429 Mass. 231, 235 (1999) (judge must examine "totality of the circumstances" to determine whether identification procedure is unnecessarily suggestive [quotation omitted]).  "Relevant to the good reason examination are the nature of the crime involved and corresponding concerns for public safety; the need for efficient police investigation in the immediate aftermath of a crime; and the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track."  Austin, supra.  "Good reason" exists where some combination of the factors collected in Austin is present.  See ibid.  See also Commonwealth v. Harris, 395 Mass.

296, 299 (1985); Commonwealth v. Thompson, 427 Mass. 729, 735-736, cert. denied, 525 U.S. 1008 (1998); Commonwealth v. Martin, 447 Mass. 274, 279-281 (2006); Commonwealth v. Meas, 467 Mass. 434, 441-442, cert. denied, 135 S. Ct. 150 (2014); Commonwealth v. Figueroa, 468 Mass. 204, 217-218 (2014); Forte, supra at 477-478; Commonwealth v. Thomas, 476 Mass. 451, 460 (2017); Dew, supra at 307-308; Commonwealth v. Wen Chao Ye, 52 Mass. App. Ct. 850, 854-855 (2001); Commonwealth v. Sylvia, 57 Mass. App. Ct. 66, 69 (2003); Commonwealth v. Hill, 64 Mass. App. Ct. 131, 133-134 (2005); Commonwealth v. Martinez, 67 Mass. App. Ct. 788, 791-793 (2006); but have concluded otherwise where none are present, see Commonwealth v. Moon, 380 Mass. 751, 757-759 (1980); Commonwealth v. A Juvenile, 402 Mass. 275, 280 (1988).

None of the Austin factors are present here. This was a property crime, not one of violence; there were no immediate safety concerns; the identification was not made in the immediate aftermath of the crime; and there is no suggestion that the detective would be thrown off track unless he used the single-photograph display. The Commonwealth contends, however, that the detective's knowledge that stolen jewelry is often quickly melted down was good reason enough to use an inherently suggestive identification procedure. The detective's concern of a general risk, however, is not enough absent some connection to

the facts of this particular case.[3]  See Martin, 447 Mass. at 308
(Cordy, J., dissenting) ("[T]he challenge is to one specific
showup.  The 'good reason' required of the police must be
correspondingly specific").  The jewelry had not been sold but
was instead being held as collateral for a three-week loan of
which only two days had passed; the detective had already
located the person who held the jewelry; and the detective could
prevent destruction or alteration of the jewelry simply by
asking for it (as he ultimately did).[4]

Because we conclude that there was no good reason to
conduct the single-photograph identification procedure in the
circumstances presented, we need not reach the separate question
of the effect, if any, of the procedure on Do.  See Figueroa,
468 Mass. at 217 ("Even where there is 'good reason' for a
showup identification, it may still be suppressed if the
identification procedure so needlessly adds to the
suggestiveness inherent in such an identification that it is
'conducive to irreparable mistaken identification'" [quotation
omitted]).  If there is no good reason to use an inherently

---

[3] Whether that general knowledge might, in conjunction with
facts not presented here, be sufficient good reason to conduct a
one-on-one identification procedure is a question we need not
answer.

[4] We are sympathetic that the detective appears to have had
no impermissible aim or purpose in displaying the single
photograph as he did.  But for purposes of this analysis, good
reason is what is required, not good faith.

suggestive identification procedure, its actual suggestive impact on the witness is beside the point.[5]

For these reasons, the defendant's motion to suppress Do's identification should have been allowed.

<u>Judgment reversed</u>.

<u>Verdict set aside</u>.

---

[5] The Commonwealth does not argue that, even if erroneous, the admission of the out-of-court identification was harmless beyond a reasonable doubt. See <u>Commonwealth</u> v. <u>Jones</u>, 423 Mass. 99, 106 (1996). We note in this regard that Do did not identify the defendant in court, nor did he confirm his out-of-court identification.