NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-70

COMMONWEALTH

vs.

OLUSEGUN A. ADEKUNLE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Olusegun Adekunle, appeals from a judgment of conviction for larceny by false pretenses after a jury-waived trial in the District Court, and from the denial of his motion for a new trial asserting a claim of ineffective assistance of trial counsel. We affirm.

Background. The judge could have found the following facts. In February 2017, Ashley Day responded to a Facebook Marketplace listing for a 2005 Honda Accord. She communicated via Facebook's Messenger application with Olusegun Adekunle, who told her that the vehicle was still available, and they arranged to meet at a car lot adjacent to "an automotive place." The next day, Day met with the man whom she identified as the defendant in court. After a test drive -- during which the defendant accompanied Day and the two had "a decent

conversation" that got "a little bit personal" -- and some haggling, Day agreed to buy the car for $4,400. Day and the defendant both signed a bill of sale reflecting that Day had made a $400 deposit and owed a balance of $4,000, and the defendant allowed Day to take a photograph of the certificate of title, which she needed to insure the car. They agreed to meet the next day for Day to pay the balance in exchange for the car.

Day returned at approximately noon the next day and, seeing that the defendant was not there, called him to complete the sale. The defendant asked her to meet him later in the day. As Day was driving away, a woman called out, "Ashley," and waved her down. The woman said that she had just got off the phone with "Ogie," who had instructed her to complete the sale. The woman invited Day into the woman's car and produced a manila folder with information about the sale. The woman knew Day's first and last name, the last four digits of Day's Social Security number, the make and model of the car, how much money Day had given the defendant the previous day, and how much Day owed. After a brief conversation, Day handed the woman $4,000 in cash and two license plates she intended to transfer to the Accord. The woman assured Day "that the car would be detailed and the plates would be attached," and that the defendant would give Day the keys and the title certificate when she returned later in the evening. The woman gave Day two receipts that had

2

already been filled out:  an undated receipt showing that "Ashley" had paid $400 to "Royal Motor," and a correctly dated receipt showing that "Ashley" had paid $4,000 to "Royal Motor" for a Honda Accord.[1]

Day returned to the lot and met the defendant at approximately 4:30 P.M.  After the defendant showed her the title, bill of sale, and car key, Day told him she had already given the $4,000 to his coworker.  The defendant denied having any coworker or knowing the woman Day described and accused her of lying to him.  Day called the police, but she left within a few minutes because the police were taking too long to arrive and she had to pick up her children.

Day drove directly from the lot to the police station and made an initial statement to an officer before leaving to get her children.  The following morning, she returned and made a formal report to Brockton Police Sergeant Andrew Kalp.  At some point, Day gave Kalp a piece of paper with the spelling of the defendant's name and his cell phone number.  Kalp showed Day a Registry of Motor Vehicles (RMV) driver's license photograph on his computer screen, which Day confirmed was the person who had sold her the vehicle.

---

[1] Day had no knowledge of the defendant's affiliation with Royal Motor, if any.

3

The defendant testified in his own defense. His testimony about the test drive, negotiation, and payment of a $400 deposit was consistent with Day's. When he met Day the following afternoon and asked for the $4,000 balance, and she responded that she had already given it to "a girl that worked for [him]," the defendant told her that "there's no girl that works for me" and asked why she did not call him before handing $4,000 to a stranger. The defendant told Day to call the police and offered to help identify the woman who took the money. When asked on direct examination why he did not refund Day's $400 deposit, the defendant replied that Day had "voided the contract that we had" by not paying the balance due. He testified that he suspected Day of lying to him or running a scam.

Discussion. 1. Charging instrument. The criminal complaint against the defendant charged a single count of "larceny over $250 by false pretense . . . in violation of G. L. c. 266, § 34 and § 30 (1)." The defendant argues that the complaint was defective under art. 12 of the Massachusetts Declaration of Rights because it impermissibly alleged violations of two statutes in a single count and thus did not give him fair notice of the charge against him.

Because Adekunle did not raise this issue before trial, and it is not based on "a failure to show jurisdiction in the court or to charge an offense," it is statutorily waived. G. L.

4

c. 277, § 47A. See Commonwealth v. Lamont L., 438 Mass. 842, 845 (2003); Commonwealth v. Hrycenko, 417 Mass. 309, 312 (1994). Even if we were to review for error creating a substantial risk of a miscarriage of justice, see Commonwealth v. Fernandes, 430 Mass. 517, 521 n.13 (1999), cert. denied sub nom. Martinez v. Massachusetts, 530 U.S. 1281 (2000), none is apparent. The general larceny statute, G. L. c. 266, § 30 (1), encompasses the common-law crime of larceny by false pretense. See Commonwealth v. Labadie, 467 Mass. 81, 87 & n.7 (2014); Commonwealth v. Mills, 436 Mass. 387, 391–392 (2002). Indeed, G. L. c. 266, § 34, merely states, "Whoever, with intent to defraud and by a false pretense, induces another to part with property of any kind . . . shall be guilty of larceny," without specifying the punishment. Section 30 (1) provides the maximum fines and terms of imprisonment for larceny, depending on the value of the property taken. Thus, § 34 can only be understood in tandem with § 30 (1). The complaint was "sufficient to enable the defendant to understand the charge and to prepare his defense." G. L. c. 277, § 34.[2] See Commonwealth v. Canty, 466 Mass. 535, 547 (2013).

---

[2] G. L. c. 277, § 34, "is applicable to complaints, as well as indictments." Commonwealth v. Lourenco, 438 Mass. 1018, 1019 n.2 (2003). See G. L. c. 277, § 79.

2.  Sufficiency of the evidence.  The defendant asserts that the evidence was insufficient to prove his guilt as a joint venturer with the woman who took Day's money.  Specifically, he argues that his motion for a required finding of not guilty at the close of the Commonwealth's case should have been allowed because the Commonwealth failed to prove that the woman was acting in concert with the defendant as opposed to on her own.

To prove the defendant's guilt as a joint venturer with the unknown woman, the Commonwealth was required to show that he knowingly participated with her to induce Day to part with $4,000 under the false pretense that Day would receive the car in return.[3]  See Commonwealth v. Zanetti, 454 Mass. 449, 467-468 (2009) ("When there is evidence that more than one person may have participated in the commission of the crime," Commonwealth must prove "beyond a reasonable doubt that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense" [footnote omitted]).

---

[3] Because we conclude that the evidence was sufficient to convict the defendant as a joint venturer, we need not address whether his personal act of taking, and refusing to return, the $400 deposit from Day is sufficient in itself to prove larceny over $250.  (The criminal complaint issued prior to the effective date of St. 2018, c. 69, § 136, which increased the property value for felony larceny from $250 to $1,200.)

6

The defendant suggests that the unknown woman could have acquired Day's first and last name, a plausible nickname for the defendant, the make and model of the car in question, the fact that Day had given the defendant a $400 deposit, and the fact that she owed another $4,000 from a source other than the defendant.[4]  While the defendant's hypothesis is perhaps possible, the detailed information that the woman possessed was far more likely to have been intentionally supplied by the defendant than by spying, eavesdropping, or casual conversation.

"When reviewing a motion for a required finding of not guilty, the question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation and citation omitted).  Commonwealth v. Schoener, 491 Mass. 706, 714 (2023).  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "The relevant question is whether the evidence would permit a jury to find guilt, not whether the evidence requires such a finding."  Commonwealth v. Brown, 401 Mass. 745, 747 (1988).

---

[4] The evidence did not explain how the unknown woman might have acquired Day's Social Security number.  We do not consider the woman's knowledge of Day's Social Security number as evidence of the defendant's guilt, however, because there was no evidence that Day gave the defendant her Social Security number.

7

Based on the unknown woman's knowledge of details that only someone familiar with Day's and the defendant's prior negotiations would know, the judge could rationally conclude that the defendant had provided the details that would trick Day into parting with her money and that the woman was acting in concert with him.  The Commonwealth was not required to foreclose all other possibilities.  See Commonwealth v. Platt, 440 Mass. 396, 401 (2003) ("The Commonwealth need not exclude every reasonable hypothesis of innocence to prove its case, if the record viewed in its entirety supports a conclusion of guilt beyond a reasonable doubt" [quotations and citation omitted]). It was the judge's province, as trier of fact, to determine where the truth lay.  See id.

3.  Ineffective assistance of counsel.  The defendant asserts that his trial counsel was ineffective for failing to move to suppress Day's pretrial identification of the defendant from the RMV photograph.  He argues that the identification was inadmissible because it was unnecessarily suggestive and, had it been suppressed, Day's in-court identification at trial would also have been inadmissible.

To prevail on a motion for new trial premised on ineffective assistance of counsel, "the defendant must show that the behavior of counsel fell measurably below that of an ordinary, fallible lawyer and that such failing 'likely deprived

8

the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Prado, 94 Mass. App. Ct. 253, 255 (2018), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Where the motion arises from trial counsel's failure to file a motion to suppress, the defendant must also establish that the motion to suppress likely would have been granted. See Commonwealth v. Comita, 441 Mass. 86, 91 (2004); Commonwealth v. Lykus, 406 Mass. 135, 142-143 (1989).

"One-on-one identification procedures are generally disfavored as inherently suggestive." Commonwealth v. Carlson, 92 Mass. App. Ct. 710, 712 (2018). "To succeed in suppressing evidence of such an identification, however, the defendant must prove by a preponderance of the evidence that the police procedure was 'so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny [the defendant] due process of law.'" Id., quoting Commonwealth v. Dew, 478 Mass. 304, 306-307 (2017). One-on-one identification procedures may be permissible where "the police have good reason to use the procedure and they avoid any special elements of unfairness, indicating a desire on the part of the police to stack the deck against the defendant" (quotations and citation omitted). Commonwealth v. Sylvia, 57 Mass. App. Ct. 66, 69 (2003).

At the motion hearing, trial counsel testified that she did not move to suppress the pretrial identification because Day

9

would likely have been able to identify the defendant from their multiple interactions.  The judge, referring to the communications between Day and the defendant online, in person, and over the phone, concluded that Kalp's display of the defendant's RMV photo to Day "did not create a substantial risk of mistaken identification" such that "a motion to suppress the identification had no realistic chance of success."  We agree.[5]

Showing Day the RMV photo was not unduly suggestive; indeed, it was not suggestive at all.  The procedure was not "designed by the police to suggest to the victim that the defendant is the criminal."  Commonwealth v. Coy, 10 Mass. App. Ct. 367, 372 (1980).  To the contrary, Kalp showed Day the photo to confirm the information that Day had brought to him.  Thus, Kalp had the "good reason" to show Day the photo in the interest of "prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track."  Commonwealth v. Austin, 421 Mass. 357, 362 (1995).  The procedure was not designed to "stack the deck" against the defendant.

_____

[5] We need not belabor the standard of review for the denial of the defendant's new trial motion, as we would reach the same result whether we were conducting de novo review or according "special deference" to the motion judge, who also presided at trial.  See Commonwealth v. Zagrondy, 443 Mass. 93, 103 (2004).

10

Moreover, because Day had "a solid basis for focusing on, and remembering, the appearance of the person" she had encountered on Facebook and in two face-to-face meetings, including a "decent" and somewhat "personal" conversation during the test drive, viewing the RMV photo "was not particularly suggestive." Commonwealth v. Fielding, 94 Mass. App. Ct. 718, 722 (2019). Cf. Commonwealth v. Thomas, 476 Mass. 451, 461 (2017) ("[W]here a witness believes [she] knows the perpetrator from prior interactions and knows the perpetrator's name, the risk of misidentification . . . is less than where the witness looks at an array in search of an unknown person [she] saw only during the commission of the crime").

As a motion to suppress the out-of-court identification was not likely to succeed, counsel's failure to pursue such a motion did not amount to conduct falling measurably below that of

reasonably competent counsel.  The judge did not err or abuse his discretion in denying the new trial motion.

Judgment affirmed.

Order denying motion for new
   trial affirmed.

By the Court (Milkey,
  Massing & Neyman, JJ.[6]),

*Paul Little*

Assistant Clerk

Entered:  May 22, 2024.

---

[6] The panelists are listed in order of seniority.