NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

23-P-541                                          Appeals Court


COMMONWEALTH  vs.  TYLER JACQUARD.


No. 23-P-541.

Essex.     February 26, 2024. – June 28, 2024.

Present:  Vuono, Massing, & Toone, JJ.


Open and Gross Lewdness and Lascivious Behavior.  Evidence,
     Photograph, Identification.  Identification.
     Constitutional Law, Identification.  Due Process of Law,
     Identification.  Practice, Criminal, Motion to suppress.




     Indictment found and returned in the Superior Court
Department on August 26, 2020.

     A pretrial motion to suppress evidence was heard by C.
William Barrett, J., and the case was tried before Hélène
Kazanjian, J.


     Christopher DeMayo for the defendant.
     Kayla M. Burns, Assistant District Attorney, for the
Commonwealth.


     MASSING, J.  In this appeal, we consider whether the police

had good reason to use a single-photograph identification

procedure in the immediate aftermath of a noncontact sex

offense.  A witness who happened to be parked beside the

defendant's car in a shopping mall saw him expose his penis and masturbate. The witness used her cell phone to make a video recording, which captured, among other things, images of the defendant's car and license plate. About one hour later, the police showed the witness the defendant's driver's license photograph, which they had obtained using the license plate number she had provided. She confirmed that the man in the photograph, the defendant, Tyler Jacquard, was the man she had seen. The defendant's motion to suppress the identification was denied, and after a trial in the Superior Court in which the parties stipulated to the defendant's identity, the jury found him guilty of open and gross lewdness in violation of G. L. c. 272, § 16. On appeal, the defendant claims that his motion to suppress was erroneously denied, and that the error requires reversal of his conviction and a new trial. We affirm.

Proceedings on motion to suppress. The defendant moved to suppress the identification of him from his driver's license photograph as unnecessarily suggestive, violating his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, as well as common-law principles of fairness. Two witnesses testified at the evidentiary hearing on the defendant's motion: the principal witness, whom we will call Bridget, whose testimony the motion judge found to be "both

credible and specific," and Lynnfield police Officer Marco DePalma, whose testimony the judge also found to be credible. We set forth the facts found by the judge, supplemented by undisputed record evidence consistent with the judge's ultimate findings and conclusions. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

1. Facts. On a sunny afternoon in June 2020, Bridget was sitting in her sport utility vehicle (SUV), parked at an outdoor shopping mall in Lynnfield, waiting to pick up her lunch. A white Toyota sedan pulled into the space beside her on the left and its driver started masturbating. Three girls, between twelve and fourteen years old, were standing on the sidewalk "directly in front of" him.[1] The man exposed and stroked his penis while looking at the girls, who appeared not to notice. Bridget, however, had a clear view of the man from the vantage point of her SUV, and after watching for about fifteen seconds, she started recording a video with her cell phone as she got out of her vehicle and yelled at him to "get the fuck out of here." The twenty-two second video recording showed the license plate

---

[1] The defendant claims that the judge's finding that the girls were "play[ing] on the park located directly in front of his car" was clearly erroneous. Our independent review of the video recording confirms the judge's finding that the girls were standing directly in front of the defendant's car. It is true that they appear to be talking rather than playing, and they were on a sidewalk rather than a "park," but these discrepancies are irrelevant to any issue in this appeal.

of the car, as well as images of the man's profile and a tattoo on his arm, as he backed his car out of the parking space and drove away.  Bridget called the police, told them what she had seen, and provided the license plate number she had recorded. She then picked up her lunch and left.

DePalma, who had recently joined the Lynnfield police after five years in the Melrose police department, was on patrol when he received a report of a man "inappropriately touching himself" at the shopping mall.  The report included a license plate number and the name of the owner of the vehicle associated with it -- the defendant.  DePalma was familiar with the defendant because the defendant's name had come up frequently at police department roll calls in the context of sex offenses when DePalma was working in Melrose.  DePalma entered the license plate number in his cruiser's mobile computer terminal, which displayed the defendant's Registry of Motor Vehicles (RMV) driver's license photograph.  DePalma "immediately recognized" the person in the photograph and took a photograph of it using his cell phone.

DePalma and two other officers met with Bridget, who had promptly returned to the mall at the request of the police.  She first provided a description of the man she had seen:  "white sh[i]rt, blue shorts, medium build, dark curly hair, and a scruffy beard."  DePalma then showed Bridget the defendant's RMV

photograph on his cell phone and asked, "Was this him?" Bridget said yes. Neither DePalma nor any of the other officers told Bridget anything about the photograph or the defendant before DePalma displayed the photograph to Bridget. However, after Bridget made the identification, DePalma and the other officers exchanged glances that led Bridget to believe that they knew who he was. Bridget did not tell the officers about her video recording.

DePalma actively continued the investigation because when "someone is looking at young girls, . . . it's a heightened call and you want to try and find the guy." He drove around the shopping center looking for the defendant's car. He contacted the shopping center's security personnel to see if they had surveillance video footage, but he was told that they did not have a camera in the area where the defendant had been parked. He called the Melrose police and asked them to check if the defendant's car was at his house. The Melrose police drove by the defendant's residence that afternoon but did not see his car in the driveway. They did not stay and wait for him to return home.

The next day DePalma learned that Bridget, on her own initiative, had posted on social media information about the incident, including her video recording and information about the defendant that Bridget had obtained from the Sex Offender

Registry Board's publicly accessible website.  Bridget suspected that a person who exposed himself in public might be listed as a sex offender, and she found the defendant's information by doing a geographic search for sex offenders in the community.[2]  DePalma contacted Bridget to get a copy of the video recording, which she provided.

2.  Motion judge's ruling.  The motion judge denied the motion to suppress the identification.  The judge found that there were "no special elements of unfairness" in the procedure.  Bridget gave the police a detailed description of the defendant before the procedure, and the police did not give her any information about the defendant or say anything else to her before showing her the RMV photograph.  Citing Commonwealth v. Austin, 421 Mass. 357 (1995), and Commonwealth v. Carlson, 92 Mass. App. Ct. 710 (2018), the judge also found "good reason . . . for the police to use a one-on-one identification procedure."  The crime was a sex offense committed in a public place in front of twelve to fourteen year old children, and the police had knowledge of the defendant's prior sex offenses, warranting their concern for public safety.  Confirming the defendant's identification was also "an immediate concern" to

---

[2] Although DePalma testified that the defendant was known as a sex offender in Melrose, DePalma did not specifically testify that the defendant was a registered sex offender, and no further evidence about the defendant's status was offered in evidence.

enable the officers to pursue their investigation.  Given that Bridget had provided the defendant's license plate number, use of the single RMV photograph for "prompt confirmation of the accuracy of the investigation" was reasonable.  Finally, the judge considered that the police did not follow the protocols established in Commonwealth v. Silva-Santiago, 453 Mass. 782, 797-798 (2009),[3] but concluded that under the totality of the circumstances, the procedure was not unnecessarily suggestive.

Discussion.  1.  Good reason for inherently suggestive procedure.  "For constitutional purposes, a one-photograph identification is the equivalent of an in-person, one-on-one identification (often referred to as a 'showup')."  Carlson, 92 Mass. App. Ct. at 712.  "Although disfavored as inherently suggestive, a showup identification conducted in the immediate aftermath of a crime is not necessarily impermissible."  Commonwealth v. German, 483 Mass. 553, 557 (2019).

To succeed on a motion to suppress a one-photograph identification, "the defendant must prove by a preponderance of the evidence that the police procedure was 'so unnecessarily suggestive and conducive to irreparable mistaken identification

---

[3] Silva-Santiago sets forth protocols for displaying photographic arrays.  As discussed infra, in Commonwealth v. German, 483 Mass. 553, 563-565 (2019), the court expanded and tailored the Silva-Santiago protocols for use in showup identification procedures.

as to deny [the defendant] due process of law.'" Carlson, 92 Mass. App. Ct. at 712, quoting Commonwealth v. Dew, 478 Mass. 304, 306-307 (2017). The defendant may prevail by showing, as the defendant contends here, "that the police did not have a good reason to conduct this type of disfavored, inherently suggestive, one-on-one identification procedure." German, 483 Mass. at 558.[4]

Whether good reason exists depends on at least three interrelated factors: "[1] the nature of the crime involved and corresponding concerns for public safety; [2] the need for efficient police investigation in the immediate aftermath of a crime; and [3] the usefulness of prompt confirmation of the accuracy of investigatory information, which, if in error, will release the police quickly to follow another track." Austin, 421 Mass. at 362. See Mass. G. Evid. § 1112(b)(1)(A) (2024). "'Good reason' exists where some combination of the factors collected in Austin is present." Carlson, 92 Mass. App. Ct. at 713. The totality of the circumstances of the interaction between the witness and the officers conducting the identification procedure must be considered. See Commonwealth

---

[4] A defendant may also attempt to show that "the procedure utilized by the police include[d] 'special elements of unfairness.'" German, 483 Mass. at 558, quoting Commonwealth v. Crayton, 470 Mass. 228, 236 (2014). On appeal, the defendant does not challenge the motion judge's conclusion that the procedure did not involve any special elements of unfairness.

v. Otsuki, 411 Mass. 218, 232-233 (1991); Carlson, supra at 712.
"The existence of 'good reason' for a showup identification is a
question of law to be decided by an appellate court, based on
facts found by the motion judge." Dew, 478 Mass. at 307.[5]

The motion judge found that all three Austin factors were
present in DePalma's decision to show Bridget the defendant's
RMV photograph on DePalma's cell phone. The defendant takes
exception with respect to each factor.

The defendant argues that the first factor, the nature of
the crime and concern for public safety, is inapplicable because
open and gross lewdness is a noncontact offense, and "nothing
about it suggested that it would escalate into a contact offense
or violence." In other words, he suggests that he presented no

---

[5] "Good reason" to conduct a one-on-one identification under
Austin, 421 Mass. at 362, is related to, but distinct from,
"good reason" under Crayton, 470 Mass. at 241-244, to permit an
in-court identification with no prior out-of-court
identification. The good reason that justifies showup
procedures usually "depends on the short duration of time
between the crime and the showup, and will never justify an in-
court showup." Id. at 242. In addition, while the defendant
always bears the burden of proving that an out-of-court
procedure was unduly suggestive, the Commonwealth bears the
burden of production and must file a motion in limine to admit
an in-court identification where there has been no out-of-court
identification. See id. at 243. In another variation on the
theme, if an out-of-court identification is suppressed as
unnecessarily suggestive, an in-court identification may be
conducted, but only if the Commonwealth can demonstrate by clear
and convincing evidence that the witness is able to identify the
defendant from a source independent of the suggestive procedure.
See Commonwealth v. Johnson, 473 Mass. 594, 602 (2016); Mass. G.
Evid. § 1112(c)(1)(B).

urgent threat to public safety that would supply the police with good reason to conduct an inherently suggestive identification procedure.  Although the defendant is correct that the nature of his offense did not pose the same level of danger as the "dangerous bank robber . . . at large" in Austin, 421 Mass. at 362, a sex offender at large at a shopping mall is not a trivial concern.  Indeed, the essential elements of the crime require proof of conduct performed in a manner designed to cause, and actually causing, "shock" or "alarm."  Commonwealth v. Maguire, 476 Mass. 156, 158-159 (2017).  See Commonwealth v. Fay, 467 Mass. 574, 581, cert. denied, 574 U.S. 858 (2014) (convictions for noncontact sex offenses could render defendant "menace" under sexually dangerous persons statute if conduct could reasonably be expected to instill in prospective victims fear of being sexually assaulted).  Moreover, as the motion judge recognized, the target of the defendant's conduct was a group of preteen and young teenaged girls, and the officers were aware that the possible perpetrator had a history of sex offenses.  We agree with the motion judge that the nature of the offense raised legitimate public safety concerns providing justification for the one-photograph procedure.

The defendant downplays the second Austin factor, "the need for efficient police investigation in the immediate aftermath of a crime," stating that the police can always argue that the

speed and convenience of a one-on-one identification procedure is a benefit, and asserting that it would not have been difficult or especially time-consuming for the police to have arranged for a lineup or a photographic array.  He also argues that because the criminal complaint did not issue until three days after the incident, and he was not arrested until two days after that, the need for an efficient investigation was "fiction."  We disagree.

Whether an identification procedure will contribute to an efficient investigation "is not governed by the availability of another approach."  Commonwealth v. Martin, 447 Mass. 274, 280 (2006).  See Commonwealth v. Storey, 378 Mass. 312, 317 (1979), cert. denied, 446 U.S. 995 (1980) (one-on-one identifications not "constitutionally unacceptable . . . simply because these identification procedures might have taken place just as easily in the form of lineups").  The question is whether the identification procedure used is unnecessarily suggestive.  See Martin, supra; Storey, supra.  The procedure here was conducted promptly, within one hour of the crime.  See Commonwealth v. Figueroa, 468 Mass. 204, 217 (2014); Commonwealth v. Meas, 467 Mass. 434, 441-442, cert. denied, 574 U.S. 858 (2014).  DePalma then took immediate steps to look for the defendant in the vicinity of the shopping mall, seek surveillance videotapes, and alert officers in the town where the defendant resided.  The

time it would have taken to prepare a photographic array would have hampered police efforts to protect the public by determining whether the perpetrator was still in the vicinity -- and could have further delayed an arrest.  "[E]xigent or special circumstances are not a prerequisite" for one-on-one identification procedures.  Austin, 421 Mass. at 361, quoting Commonwealth v. Harris, 395 Mass. 296, 299 (1985).  See Commonwealth v. Crayton, 470 Mass. 228, 235-236 (2014) ("there is generally 'good reason' where the showup identification occurs within a few hours of the crime, because it is important to learn whether the police have captured the perpetrator or whether the perpetrator is still at large, and because a prompt identification is more likely to be accurate when the witness's recollection of the event is still fresh").

Finally, the defendant contends that the third Austin factor, the need for prompt confirmation or refutation of investigatory leads, was not truly implicated in this case because the police had his license plate number and knew that he was the registered owner of the car.  Whether he or someone else was using his car during the offense, the investigation would inevitably lead to him.  This contention is short sighted.

Although the police knew who owned the car in which the crime had been committed, Bridget's confirmation that the owner of the car was the same man she had seen at the shopping mall

quickly enabled the police to focus their investigation on a known suspect. If Bridget had told the police that the RMV photograph did not depict the man she had seen, the direction of the investigation would have shifted dramatically. See Figueroa, 468 Mass. at 217 (prompt identification likely to be more accurate because eyewitness's memory is fresh, "but also, more importantly, it allows the police to learn quickly whether the suspect is the perpetrator of the crime so that, if he is not, the police can continue the investigation to find the actual perpetrator"). It would have made a substantial difference, both for the police and for the defendant, whether they approached him as the target of the investigation or as a source to help them identify the perpetrator.

It is helpful to recall why one-on-one identification procedures are considered "inherently suggestive," a point that our cases generally take as a given. Showups are considered inherently suggestive because they convey the message that the police have knowledge that caused them to single out a particular suspect. See, e.g., United States ex rel. Kirby v. Sturges, 510 F.2d 397, 403 (7th Cir.), cert. denied, 421 U.S. 1016 (1975) ("almost any one-to-one confrontation between a victim of crime and a person whom the police present to him as a suspect must convey the message that the police have reason to believe him guilty"); State v. Lawson, 352 Or. 724, 743 (2012)

(showups less reliable than properly conducted lineups "because the witness is always aware of whom police officers have targeted as a suspect").  Because of their inherent suggestiveness, showup identifications should be employed only when there is good reason to do so.

Where, as here, a witness provides the police with personally identifying information, such as a license plate number, name, address, or telephone number, of someone the witness saw committing a crime, and the police in response ask the witness to confirm that person's appearance from a neutral image associated with the identifying information supplied by the witness, the message that the police convey is less suggestive than when the police themselves produce a single suspect for the witness to identify.  Bridget likely knew that the police were showing her a photograph associated with the license plate number that she had provided, rather than a person whom the police had identified as a likely perpetrator.  This circumstance negates much of the suggestiveness inherent in a usual showup procedure.[6]  The procedure employed here was not "designed by the police to suggest to the victim that the defendant is the criminal," Commonwealth v. Coy, 10 Mass. App.

---

[6] We agree with the judge that the police reaction after Bridget identified the defendant's photograph did not retroactively make the procedure suggestive.

Ct. 367, 372 (1980), or to "stack the deck against the defendant" (quotation and citation omitted), Commonwealth v. Sylvia, 57 Mass. App. Ct. 66, 69 (2003).  Thus, not only did the police have good reason to show Bridget the defendant's photograph, the procedure was not as inherently suggestive as many showups.

2.  German instruction.  Since December 11, 2019,[7] police officers conducting showup identification procedures have been required to instruct the witness as follows:

> "You are going to be asked to view a person; the alleged wrongdoer may or may not be the person you are about to view; it is just as important to clear an innocent person from suspicion as it is to identify the wrongdoer; regardless of whether you identify someone, we will continue to investigate; if you identify someone, I will ask you to state, in your own words, how certain you are."

German, 483 Mass. at 564.  See Mass. G. Evid. § 1112(b)(1)(A). The German instruction is derived from the protocol for photographic arrays established in Silva-Santiago, 453 Mass. at 797-798.  Although no published decision has stated explicitly that the German instruction is required for one-photograph identification procedures as well as showup procedures, because

---

[7] The rule announced in German was applied prospectively to showup identification procedures conducted after the issuance of the rescript, which occurred on December 11, 2019.  See German, 483 Mass. at 554, 564; Mass. R. A. P. 23 (b), as appearing in 481 Mass. 1653 (2019).  The identification in this case was conducted about six months later.

the procedures are equivalent for constitutional purposes, we assume that the same protections apply.

The Commonwealth appropriately concedes that DePalma did not give Bridget the German instruction. The fact that German had been in effect for only six months, and had not yet been applied to one-photograph identification procedures, may explain, but does not excuse, the error. However, failure to give the German instruction does not automatically require suppression. Rather, it "affects a judge's evaluation of the admissibility of the identification." German, 483 Mass. at 565, quoting Commonwealth v. Thomas, 476 Mass. 451, 459 (2017). That is, the officer's failure to instruct the witness as required by German is another factor that the judge must consider under the totality of the circumstances to determine whether the identification procedure, as administered, was unnecessarily suggestive.[8] We agree with the motion judge that, under the

---

[8] Where the identification is found admissible, failure to administer the German instruction also "affects the judge's instructions to the jury regarding their evaluation of the accuracy of the identification." German, 483 Mass. at 565, quoting Thomas, 476 Mass. at 459. See Commonwealth v. Travis, 100 Mass. App. Ct. 607, 615 (2022) ("In any event, the absence of recommended protocols goes to the weight of the identifications, not their admissibility"). In this case, no special jury instruction on the identification procedure was necessary because the parties stipulated to the defendant's identity as the man in the video recording and the man whom Bridget had seen at the mall.

totality of the circumstances here, DePalma's failure to follow the German instruction did not make the identification procedure, conducted with good reason and without any special elements of unfairness, so unnecessarily suggestive and conducive to mistaken identification as to violate the defendant's due process rights.  The motion to suppress was properly denied.[9]

Judgment affirmed.

---

[9] Because Bridget unequivocally identified the defendant in an admissible pretrial procedure, the in-court identification of the defendant was also admissible.  See Dew, 478 Mass. at 315; Mass. G. Evid. § 1112(c)(1)(A).  As both the single-photograph identification and the in-court identification were properly admitted, we need not address the parties' contentions concerning whether the admission of the identifications was harmless error and the effect, if any, that the defendant's stipulation to his identity at trial might have had on the harmless error analysis.